**Melvin MADDEN, Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–Respondent.**

No. 40A05–9711–PC–489.

Court of Appeals of Indiana.

June 26, 1998.

Transfer Denied Sept. 2, 1998.

Susan K. Carpenter, Public Defender, Tracy A. Nelson, Deputy Public Defender, Indianapolis, for Appellant–Petitioner.

Jeffrey A. Modisett, Attorney General, Randi E. Froug, Deputy Attorney General, Indianapolis, for Appellee–Respondent.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Petitioner–Appellant Melvin Madden appeals the post-conviction court's denial of his petition for post-conviction relief.

We affirm.

### ISSUES

Madden raises two issues for our review, which we restate as:

1. Whether the post-conviction court erred in determining that the trial court's acceptance of Madden's guilty plea was supported by a sufficient factual basis.

2. Whether the post-conviction court erred in determining that the trial court's sentencing statement was sufficient to support the enhancement of Madden's sentence and the imposition of consecutive sentences.

### FACTS AND PROCEDURAL HISTORY

At approximately 3:30 p.m. on January 2, 1989, Madden purchased gas at a Shell Gas Station and attempted to pay for the gas and other items with an invalid Shell Credit Card. Following company policy, David Wick, the station's nineteen year-old clerk, kept the invalid card. After telling Wick that he would return, Madden left the premises. Madden returned to the station at approximately 5:30 p.m. and asked that Wick return the card to him. When Wick refused, Madden pulled out a handgun and shot Wick in the face and the back of the head. Madden then took the credit card and an unspecified amount of money from the cash register.

Madden was arrested and charged with attempted murder and robbery. When Wick later died from the wounds inflicted by Madden, the charges were amended to include murder, felony murder, robbery, and capital murder. Madden pled guilty to murder and robbery while armed with a deadly weapon. He was sentenced to sixty years for murder and twenty years for robbery, with the sentences to be served consecutively.

Madden later filed a petition for post-conviction relief, alleging that there was no factual basis for his plea and that he was improperly sentenced. The post-conviction court denied his petition, and he now appeals.

### DISCUSSION AND DECISION

#### I. FACTUAL BASIS FOR THE GUILTY PLEA

A trial court may not accept a guilty plea unless a sufficient factual basis has been established for the plea. Ind.Code 35–35–1–3(b). When a post-conviction relief petitioner challenges the sufficiency of a factual basis, we neither weigh the evidence nor judge the credibility of witnesses. *Minor v. State*, 641 N.E.2d 85, 89 (Ind.Ct.App.1994), *trans. denied.* We confine our review to the evidence most favorable to the State, and if there is substantial evidence of probative value to support the trial court's finding, we will affirm it. *Id.*

Trial court determinations of an adequate factual basis are presumed to be cor-

rect. *Butler v. State,* 658 N.E.2d 72, 77 (Ind.1995). A trial court need not find evidence proving guilt beyond a reasonable doubt to conclude that a factual basis exists. *Id.* "Such a high standard would transform the guilty plea hearing into a veritable bench trial, the very process that one pleading guilty seeks to avoid." *Id.* Instead, our appellate courts have held that a factual basis exists when there is evidence about the elements of the offense from which a court could reasonably conclude that the defendant is guilty. *Id.* Relatively minimal evidence has been held adequate, and we review claims of error under an abuse of discretion standard. *Id.* The factual basis requirement "primarily ensures that when a plea is accepted there is sufficient evidence that a court can conclude that the defendant could have been convicted had he stood trial." *Id.* at 76. This standard ensures that "a person who pleads guilty truly is guilty." *Id.*

An adequate factual basis for the acceptance of a guilty plea may be established in several ways: (1) by the State's presentation of evidence on the elements of the charged offenses; (2) by the defendant's sworn testimony regarding the events underlying the charges; (3) by the defendant's admission of the truth of the allegations in the information read in court; or (4) by the defendant's acknowledgment that he understands the nature of the offenses charged and that his plea is an admission of the charges. *Minor,* 641 N.E.2d at 89.

In the present case, Madden contends that he did not understand the intent requirement of the murder statute, and that there was no factual basis showing that he "knowingly" killed Wick. He argues that his misunderstanding of the requirement of "knowingly" is evidenced by his agreement with trial counsel that "an individual who points a loaded weapon at another individual satisfies the knowing requirement of murder." (R. 670).

At the guilty plea hearing, Madden acknowledged that he understood that he was charged with the offense of murder and that he understood the elements of murder. He also acknowledged that he understood that the entry of his guilty plea was an admission of the truth of the facts alleged in the information, which stated that he "knowingly" shot Wick in the head and face with a gun "held in his hand." (R. 57). He testified that he pulled a gun out of his coat, pointed the gun at Wick, and "the gun discharged." He also testified that he was aware that at the time he pointed the gun at Wick, he placed Wick in a position of substantial risk. He unequivocally stated that he was guilty of murder after hearing an investigator testify that at least one of the bullets exited from a barrel that was only six inches from Wick's head. Although the record of the guilty plea hearing is not as pristine as we might desire, it is apparent from the record that Madden was not pleading guilty while maintaining that he accidentally shot Wick or while maintaining that he was unaware that discharging a gun placed six inches from Wick's head could cause his death. We cannot say that the post-conviction court erred in determining that Madden's guilty plea was supported by a sufficient factual basis.

## II. SENTENCING

After a hearing, the trial court sentenced Madden to an enhanced term for murder of sixty years and an enhanced term for robbery of twenty years. The trial court also ordered the sentences to be served consecutively.

Madden contends that the trial court erred in the manner in which it sentenced him. Specifically, he contends that the trial court: (1) used invalid aggravators to enhance his sentences; (2) failed to make a sufficient sentencing statement; (3) improperly enhanced his sentences and ordered consecutive sentences on the basis of only one aggravator; and (4) failed to find and balance mitigating factors against aggravating factors.

Trial courts are granted broad discretion in imposing sentences, and we will reverse only for an abuse of that discretion. *Casey v. State,* 689 N.E.2d 465, 469 (Ind.Ct. App.1997). A trial court's wide discretion extends to the determination of whether to increase presumptive penalties, impose consecutive sentences on multiple convictions, or both. *Singer v. State,* 674 N.E.2d 11, 13 (Ind.Ct.App.1996). When a sentence is enhanced or consecutive sentences are imposed, the trial court must set forth a statement of its reasons for selecting a particular punishment. Ind.Code 35–38–1–3(3). Findings of

aggravating or mitigating circumstances are "ultimate facts and require identification of subsidiary facts to support them." *St. John v. State*, 523 N.E.2d 1353, 1358 (Ind.1988).

In the present case, the court made the following statement pertaining to enhancement of the sentences and the order that they be served consecutively:

> The reasons for the imposition of the sentence, Mr. Madden, [are] that ... although the presumptive sentence would be less, the court finds that aggravating circumstances exist in this case which require this court to sentence you to the maximum amount of time allowed by law. Those aggravating circumstances include but are not limited to the following facts[:] [1] that this murder was committed during the course of a robbery which in and of itself is recognized by the Indiana State Legislature as an aggravating circumstance sufficient from which to sentence you to the death penalty. [2] In addition to that, you have taken from this community a valued member. [3] And your prior record justifies an increase in your sentence.

(R. 710–11).

■ The first aggravating circumstance stated by the court is based upon the trial court's belief that Madden would have been eligible for the death penalty under Ind.Code 35–50–2–9 (1989). This version of the statute, like the current version of the statute, provides that it is an aggravating circumstance making a defendant eligible for the death penalty when a defendant "intentionally" kills the victim while committing the offense of robbery. Here, Madden was charged with and pled guilty to "knowingly" killing Wick. This "knowing" murder committed during a robbery did not render him eligible for the death penalty. Therefore, the trial court erred in citing eligibility for the death penalty as an aggravator.

■ The second aggravating circumstance stated by the court is improper. We must assume that every victim of a murder was a valued member of the community. The value of a victim's life is a component of the statutory presumptive sentence; a trial court is not required to determine which victim's life is a component of the statutory presumptive sentence; a trial court is not required to determine which victim's life is valuable to the community and which is not.

■ The third aggravating circumstance stated by the court is Madden's "prior record." Generally, we require that a trial court detail the specific incidents comprising the prior record. *See St. John*, 523 N.E.2d at 1358; *Day v. State*, 669 N.E.2d 1072, 1073 (Ind.Ct.App.1996). However, in a non-death penalty case it is sufficient if the trial court's reasons for enhancement are clear from a review of the pre-sentence report. *Day*, 669 N.E.2d at 1073–74. Here, a review of the pre-sentence report reveals that the forty-three year old Madden committed criminal offenses as a seventeen year old and again as a twenty-two year old. The pre-sentence report also reveals that Madden was convicted of murder, which was later overturned on appeal.

■ Ind.Code 35–38–1–7(b)(2) allowed the trial court to consider a defendant's "history of criminal activity" as an aggravating circumstance.[1] A vacated conviction may be considered as evidence indicating prior criminal activity, and it may be utilized as an aggravator in a later sentencing hearing. *See, Edwards v. State*, 518 N.E.2d 1137, 1140 (Ind.Ct.App.1988), *trans. denied* (holding that the vacation of two prior convictions did not prevent the trial court from considering the convictions as evidence of prior criminal history). *But see, White v. State*, 647 N.E.2d 684, 688 (Ind.Ct.App.1995) (holding that a vacated conviction cannot be used as an aggravator where the conviction was overturned because of possible jury taint). Here, Madden's first murder conviction was vacated because of the use of an improper search warrant. *See Madden v. State*, 263 Ind. 223, 328 N.E.2d 727 (1975). However, this factor alone does not prevent the sentencing court from considering the facts surrounding the murder as indicative of prior criminal activity.

■ Madden contends that the trial court erred in basing the enhancement of his mur-

---

1. This statute has since been repealed and this subsection has been replaced by Ind.Code 35– 38–1–7.1(b)(2).

der sentence and the order of consecutive sentences solely on his criminal history. There is no constitutional or statutory prohibition against using the same factor to both enhance and impose consecutive sentences. *Reynolds v. State,* 657 N.E.2d 438 (Ind.Ct.App.1995); *Hardebeck v. State,* 656 N.E.2d 486, 491 (Ind.Ct.App.1995), *trans. denied.* Here, Madden's current conviction represents the second time he was involved in the taking of another person's life. This fact is sufficient to support both enhancement and consecutive sentences.

Madden also contends that the trial court erred in not finding and giving appropriate weight to alleged mitigating factors. While a finding of mitigators is not typically required, a trial court's failure to find significant mitigating circumstances which are clearly supported by the record may give rise to the belief that they were overlooked and were not properly considered. *See Casey,* 689 N.E.2d at 469. Here, Madden's alleged mitigators are that he lived a law-abiding life for a substantial period of time, he was a person of good character, and he pled guilty. While we find that the trial court is not compelled to consider the first two alleged mitigators, the trial court is compelled to find that pleading guilty is a valid mitigator. *See Singer,* 674 N.E.2d at 18. However, the trial court is free to utilize its discretion in balancing this mitigator against any aggravator that it may find. *Id.* Given the seriousness of the aggravating circumstance, a remand to the trial court would accomplish no purpose other than to have the sentencing court state that the mitigator is outweighed by the aggravator. Accordingly, we do not find it necessary to remand for a balancing statement by the sentencing court. *See Wethington v. State,* 560 N.E.2d 496, 510 (Ind.1990) (holding that an appellate court will not remand on a sentencing issue when the remand would be useless).

### CONCLUSION

The post-conviction court did not err in determining that the trial court's acceptance of Madden's guilty plea was supported by a sufficient factual basis. Furthermore, the post-conviction court did not err in determin-ing that the trial court properly sentenced Madden.

Affirmed.

NAJAM and BAILEY, JJ., concur.